## CUSHMAN *v.* ANNE ARUNDEL COUNTY, MARYLAND

[No. 306, September Term, 1966.]

*Decided May 3, 1967.*

The cause was argued before HAMMOND, C. J., and HORNEY, OPPENHEIMER, BARNES and FINAN, JJ.

*William J. Boehm,* for appellant.

*Robert E. Dammeyer, Deputy Solicitor,* with whom were *Bennett Crain, Jr., County Solicitor,* and *Vincent A. Mulieri* and *Joseph Charles Jacobs, Assistant County Solicitors,* on the brief, for appellee.

HAMMOND, C. J., delivered the opinion of the Court.

This appeal is from a decree dismissing a bill of complaint which sought specific performance of a contract between the County Commissioners of Anne Arundel County, the appellees, and Frederic Cushman, the appellant, under which Cushman in return for a named lump sum to be paid by the County agreed

to collect refuse, including garbage, rubbish and ashes, from Zone 7, a specified area in the northern part of the County, for one year.

It appears from the allegations of the bill and the exhibits that in the fall of 1959 the County solicited bids for the collection of refuse "in the various areas of the 3rd and 5th Election Districts." The specifications provided for the methods of collection and disposal to be followed and required that the bidder "shall submit his bid on a lump sum price to cover all of the areas specified, for collecting and disposing of the refuse for a period of one year from January 1, 1960, through December 31, 1960, with renewals as specified in paragraph six of Contract." It was also provided that the "Contract will be awarded to the lowest bidder unless in the opinion of the County Commissioners he is not able to provide the necessary equipment or carry out the terms of the specifications."

It further appears that Cushman entered into the performance of the contract on January 1, 1960, and that on February 19, 1960, the County and he entered into a supplemental agreement which recites the basic contract and that the parties "have entered into negotiations under the provisions of Paragraph 6, page 10, thereof [1] for the addition of new units and/or areas to be served in the zone covered by the aforesaid contract," and provides as follows:

---

1. Paragraph 6 provides: "This contract shall be automatically renewed for four (4) successive years upon the same terms and conditions as set forth herein provided that either of the parties can terminate the contract at the end of any calendar year, by giving notice thereof in writing to the other party by mail or delivery to the address specified herein, not later than four (4) months before the end of that year. Right to renegotiate this contract shall be reserved to either of the parties hereto upon written request delivered to the place of business of the other party not later than four (4) months prior to the end of any calendar year for the purpose of adjusting the compensation hereunder for the number of properties served in existing zones, or to include new areas to be served in such zones. Such adjustment shall be at the same rate per collection unit as applies under this contract. The contract for each renewal period shall be executed and performance bond furnished not less than thirty (30) days prior to the beginning of each annual period."

"Now, therefore, it is agreed between the parties hereto as follows:

a. The aforesaid contract is to remain in full force and effect for the calendar year 1960, with amendments thereto as set forth in sections b. and c. hereof.

b. Paragraph 2, page 9 of said contract is amended to provide an additional payment to the party of the second part in the total sum of ($3521.70), for the additional work to be performed beginning January 1, 1960, and terminating December 31, 1960.

c. Paragraph 3, page 9 of said contract is amended to include the following areas as part of the specifications referred to therein:

258 units at $13.65 per unit .......... $3521.70"

Nine similar supplemental agreements were entered into between the County and Cushman covering the years 1961, 1962, 1963 and 1964, by which a total of 1288 new units which had accrued in Zone 7 were paid for at the unit price of $13.65 each.

The bill alleges that the first supplemental agreement resulted from a demand by Cushman that he be paid for 258 new houses built in Zone 7 after January 1, 1960, which he began to service and:

"3. That as a result of the demand by the Complainant, the Respondent arbitrarily established a figure of $13.65 for each new additional unit and paid the Complainant accordingly. Your Complainant, at that time, protested the $13.65 unit computation and stated that the method by which the Respondent determined the $13.65 was in error (apparently using a figure of 3908 units in Zone 7 divided into the base price). Your Complainant was then advised by the Respondent's Director of Waste Collection, an authorized agent of the Defendant, that a comprehensive and accurate count survey will be made to determine the exact number of units at the time of the execution of the Contract in order to determine the correct unit price and

in the event of any inaccuracy, adjustment will be made to compensate for any difference.

"4. That during the years 1961, 1962, 1963 and 1964 the same incorrect unit price was used by the Respondent in computating the additional units that were added to the contract over and above the objection to the correctness of unit price by the Complainant but due to the fact that the Respondent was changing Waste Collection Directors, approximately a new one each year, the audit or accurate count survey was not completed until November 1964, at which time the Respondent refused to inform the Complainant as to the results of the accurate survey and at which time the Complainant had entered 1288 new units to the original Zone 7 total. (Refer to Exhibit No. 3). [The initial supplemental co-agreement]

"5. During the month of December 1964, the Respondent, by its advertisement for bidding purposes of a new contract for five additional years beginning January 1, 1965, stated that the unit count of Zone Seven (7) was 4220 units (this was determined by the accurate physical count survey completed November 1964). At that time, the Complainant subtracted the additional units he had served (1288) from the accurate count of 4220 units, leaving a correct and accurate count at the time of the contract's inception, January 1, 1960, as 2932 units instead of 3908 as erroneously represented by the Respondent; and that by dividing the 2932 into the base contract price of $53,-328.00, the contract unit price should have been $18.11 and said $18.11 is the figure contemplated by the original contract dated January 1, 1960, attached hereto and marked Exhibit No. 1, paragraph 6, page 9.

"6. That your Complainant feels and therefore avers that the Respondent failed to pay him approximately $4.46 for each new additional unit from the period January 1, 1960 to December 31, 1964. That the total sum due is $19,809.09 under terms of original contract and attached herewith and marked Exhibit No. 2 and

prayed to be taken as a part hereof is an accurate and complete breakdown of the computations showing the amount of underpayment."

The County demurred to the bill on the grounds that on its face it showed (a) that the parties "entered into contracts subsequent to the contract of January 1, 1960, which subsequent contracts superseded the contract of January 1, 1960," and (b) that Cushman was guilty of laches. The County also answered, reiterating the first ground of its demurrer and admitting that 1288 new units had been added to Zone 7 between 1960 and 1964, and that "a physical survey of Zone Seven in late 1964 revealed a count of 4220 units * * *."

A hearing was held before Judge Childs. No testimony was taken and no stipulation of facts entered into. Judge Childs did not rule on the demurrer but after noting that certain facts were denied but that "in other respects the parties seem to agree upon the facts and the case was presented on argument without testimony," dismissed the bill. His stated reasons were one, that Cushman's protest to the $13.65 unit price "was insufficient under the terms of the contract since renegotiation could be approved only by the County Commissioners and verbal notice to the Director of Waste Collection was by the terms of the contract not notice to invoke renegotiation," and two, that Cushman was guilty of laches because his initial bid caused the County to set the tax rates "upon the costs established by bidding," and "there is no present means for the County now to go back and reassess the property owners on the basis of a new rate based upon mistake."

The decree passed cannot stand. The judge made no formal ruling as to the demurrer. The conclusions which led to the dismissal of the bill were based on fact or inferences from facts, some of which were in dispute. What we held in *Waldman v. Rohrbaugh,* 241 Md. 137, 139, is apposite here:

"We think that the substantial merits of the case cannot be determined and the purposes of justice advanced unless the case is remanded under Maryland Rule 871 a for further proceedings. The entry of judgment was erroneous in the posture of the case when

it was entered. * * * The motion should not have been treated as one for summary judgment because the facts were not before the court by deposition or otherwise and it was not agreed that there was no dispute as to material facts as contemplated by Maryland Rule 610 if there is to be a summary judgment."

There are certain undisputed facts in the present case. The original bid called for and accepted by the County was on a lump sum, not a unit, basis. Nevertheless, the contract necessarily contemplated a determination of the number of units as of the time of the bid, for the unit price was to govern payments for additional units. The 1964 survey showed 4220 units in Zone 7 and 1288 new units had come into Zone 7 after January 1, 1960, so that initially Zone 7 contained 2932 units; 2932 divided into the contract price of $53,328 gives a unit price of $18.11. The County in its brief claims it figured Zone 7 contained 3908 units on January 1, 1960, and 3908 divided into $53,328 gives the unit price of $13.65.

Without the taking of testimony it cannot be determined whether there was a mutual or an unilateral mistake in the use of the unit figure of $13.65 in the supplemental agreements or whether, whichever the real mistake, there should be reformation of the contract and the supplements, if that is asked for in amended pleadings. Pertinent also might be a determination of whether an authorized agent of the County led Cushman into acting as he did in executing the supplements by binding promises to accomplish an accurate count of the number of units with adjustment of the unit price to follow. Significant, too, would be whether Cushman either did know or should have known the actual number of units when he signed the various supplements or whether one of the County's other theories is correct. The County says: "If there was a mutual mistake as to the actual number of units existing as of January 1, 1960, the Appellant himself was the first to know about it [since he could have made an actual count in the process of collecting the refuse], yet he never asked for renegotiation. Why? Appellee was obviously paying the Appellant for more units than he was servicing."

We do not agree with the trial judge that Cushman is barred from relief because the method set out in the contract for renegotiation was not followed precisely. The parties mutually chose the method of supplemental agreements to accomplish the purposes and results contemplated by the contract which was, as amended, continued in force and this they were free to do. Nor do we agree that laches can be found on the record before the trial judge. We think the County, having called for a lump sum contract which contemplated on the County's part either existing knowledge or prompt ascertainment of the number of existing units to be serviced, cannot say that it was misled by what Cushman alleges was temporary and tentative acquiescence in the County's estimate of the number of units or by his delay in asserting a higher unit price. It may be, however, that Cushman was guilty of laches or is estopped on facts which the County will have an opportunity to establish on remand.

*Case remanded under Rule 871 a without affirmance or reversal for further proceedings not inconsistent with this opinion, costs to abide the result.*